# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

OREGONIANS FOR FLOODPLAIN
PROTECTION, *et al.*,

        Plaintiffs,

        v.                         Civil Case No. 1:17-cv-01179

THE U.S. DEPARTMENT OF COMMERCE,
*et al.*,

        Defendants.

---

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

# I.  INTRODUCTION

The Federal Emergency Management Agency ("FEMA") has not yet determined how it will implement measures recommended by the National Marine Fisheries Service ("NMFS") in its recent biological opinion concerning the implementation of the National Flood Insurance Program ("NFIP") in Oregon.  In particular, FEMA has not *required* NFIP-participating communities to take any actions—or forego taking any actions—pursuant to the biological opinion.  These facts remain undisputed.

Plaintiffs' claims in this case are premised entirely on speculation as to what actions FEMA may take in the future.  Although Plaintiffs have proffered declarations on behalf of several Plaintiffs, Plaintiffs cannot credibly assert that NMFS' biological opinion or FEMA's actions thereunder have caused or will imminently cause any injury to Plaintiffs.  Therefore, Plaintiffs lack standing to pursue their claims against both FEMA and NMFS.  For similar reasons, Plaintiffs' claims against FEMA are unripe.  FEMA has not taken any final, reviewable agency action with respect to implementation of the reasonable and prudent alternatives of the NMFS biological opinion.  Plaintiffs' claims against FEMA will not ripen until FEMA announces specific plans concerning implementation of the biological opinion.

Faced with the irrefutable fact that FEMA has not begun implementing any of the disputed provisions of the NMFS biological opinion, Plaintiffs attempt to focus their claims almost entirely on what they characterize as FEMA's alleged *de facto* amendment of its minimum criteria for participation in the NFIP.  As with Plaintiffs' unripe claims based on speculation about FEMA's future implementation of the NMFS biological opinion, FEMA has not taken any final, reviewable agency action with respect to the amendment of its regulations.  Moreover, Plaintiffs cannot point to any instance where the referenced regulations have been

applied or will imminently be applied in a manner that injures them.  Plaintiffs' claims must be dismissed in their entirety.

## II.  STATEMENT OF FACTS

### A.  The Biological Opinion

The facts pertaining to NMFS' biological opinion and FEMA's actions thereunder to date are not in dispute.  NMFS issued its Biological Opinion on April 14, 2016.  NMFS' biological opinion included a reasonable and prudent alternative ("RPA") with six elements that NMFS recommended FEMA undertake to avoid jeopardizing Endangered Species Act ("ESA")-listed anadromous fish species and Southern Resident killer whales.  The RPA elements include deadlines for actions by FEMA, including some deadlines in 2018.  However, FEMA has not yet determined how it will implement these RPA elements or whether it will implement alternative measures to comply with the RPA in a manner consistent with its existing legal authorities.  *See* Declaration of Michal Grimm ("Grimm Decl."), ECF No. 18-1 at 3-4, ¶ 10.  *See also* Declaration of Sarah Absher ("Absher Decl.") Ex. A, ECF No. 19-1 at 19 ("Or we will search for alternative methods of implementation to meet the overall goal of the RPA - working with the State, communities, Tribal Nations, and stakeholders").

### B.  The Biological Assessment

NMFS' biological opinion was preceded by a process of formal ESA consultation with FEMA that included FEMA's submission to NMFS of a biological assessment pursuant the ESA consultation regulations, 50 C.F.R. § 402.12.  *See* Def. Ex. 7, ECF No. 18-7.  FEMA's 2013 biological assessment described FEMA's future implementation of the NFIP in Oregon as the "proposed action" subject to ESA consultation.  *Id.* at 14.  This Proposed Action included not only aspects of the NFIP implementation in Oregon that will remain unchanged but also aspects

of the NFIP implementation in Oregon that FEMA proposed to revise.  *Id.*

Among aspects of the NFIP implementation in Oregon that FEMA proposed to revise was the future application of FEMA's minimum criteria for NFIP-participating communities, 44 C.F.R. § 60.3(a)(2).  Just as NFIP-participating communities have an existing requirement to "[r]eview proposed development to assure that all necessary permits have been received from those governmental agencies from which approval is required by Federal or State law, including section 404 of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1334" 44 C.F.R. § 60.3(a)(2), FEMA stated that "if the potential of a 'take' exists for a proposed development permit within the [Special Flood Hazard Area], the community has a requirement under Part 60.3.a.2 to ensure the ESA 'permit for a take' has been obtained from NMFS." Biological Assessment at 2-40, ECF No. 18-7 at 53.

NMFS' biological opinion concluded that the proposed action described in FEMA's biological assessment will result in jeopardy to 13 species.  ECF No. 18-3 at 283.  As a result, FEMA has not instructed NFIP-participating communities to undertake revisions to their existing ordinances or to undertake any other specific actions with respect to implementation of the NMFS biological opinion.  *See* Grimm Decl. ECF No. 18-1 at 3, ¶ 8 ("FEMA has not implemented any other element of the RPA.").  FEMA will not require any revision of ordinances by NFIP-participating communities until FEMA identifies any interim measures pursuant to the RPA and issues guidance concerning the implementation of those interim measures.  *See* Grimm Decl. Attachment 1, ECF No. 18-1 at 8.  *See also* Grimm Decl. Attachment 2, ECF No. 18-1 at 147 (Letter to Rep. DeFazio); *id* at 150 (Letter to Rep. Blumenauer); *id.* at 153 (Letter to Rep. Bonamici); *id.* at 156 (Letter to Sen. Merkley); *id.* at 159 (Letter to Rep. Schrader); and *id.* at 162 (Letter to Sen. Wyden).

**C. Plaintiffs' Alleged Interests**

Plaintiffs' alleged interests are summarized in the Complaint and in the declarations proffered by Plaintiffs in response to Defendants' motion to dismiss.[1]  Plaintiffs' alleged injuries are entirely speculative.

In the proffered declarations, none of the individual members of the Plaintiff organizations states that he or she has been injured as result of the NMFS biological opinion or as a result of any action taken by FEMA.  None of the NFIP-participating communities that are among the members of the Plaintiff organizations states that it has undertaken any revisions to existing ordinances or any other actions with respect to implementation of the NMFS biological opinion.  Furthermore, none of the NFIP-participating communities states that it has denied any development proposal in response to the NMFS biological opinion.  As alleged in their declarations, it appears that the only actions taken by the NFIP-participating communities to date are actions to understand the NMFS biological opinion by reading portions of the document and attending workshops held by FEMA.  Absher Decl., ECF No. 19-1 at 5 ¶ 14; Stelzig Decl., ECF No. 19-5 at 6 ¶ 22.

Plaintiffs incorrectly suggest that, in light of the Biological Opinion's March 15, 2018

---

[1] The Absher Declaration incorrectly asserts that implementation of the RPAs recommended in the Biological Opinion will curtail farming.  ECF No. 19-1 at 6 ¶ 19.  The errata to the RPA dated January 24, 2017, clarifies that agriculture is an appropriate floodplain use and is allowed even in the floodway.  ECF No. 18-4 at 5-6.  The harm asserted in the Watson Declaration, that implementation of the RPA will interfere with the development of boat ramps to carry out conservation activities, is speculative.  ECF No. 19-4 at 3-4 ¶¶ 13-14.  To the contrary, RPA Element 4B includes an exception that allows water-dependent uses and habitat restoration activities, and FEMA may define water-dependent uses to include boat ramps for the purpose of applying this exception.  ECF No. 18-3 at 299.  The Stelzig Declaration also incorrectly asserts that implementation of the RPA will make it difficult for a community to replace its sewer pump stations.  The RPA provides that repair or replacement of utilities within their existing footprints are not subject to the RPA.  ECF No. 18-3 at 307-08.

recommended timeline for implementing RPA Element 2, ECF No. 18-3 at 287, FEMA must release its implementation plan in the near future so that participating communities have sufficient time to revise their ordinances.  Absher Decl., ECF No. 19-1 at 6-7 ¶¶ 21-22.  FEMA has advised the participating communities that March 15, 2018 is the applicable timeframe for FEMA to identify the "[i]nterim measures that FEMA and its NFIP participating communities must promptly implement to mitigate the impacts of floodplain development on natural floodplain functions needed to support listed species."  Absher Decl. Ex. A, ECF No. 19-1 at 14. FEMA has not yet provided an anticipated date on which FEMA will be issuing guidance to the communities concerning implementation of such interim measures.  Furthermore, FEMA has not advised the communities that enforceable ordinances must be implemented by March 15, 2018. To the contrary, FEMA has expressly assured local communities that "no enforcement actions will be taken against any participating Oregon communities for failure to comply with NMFS' RPA requirements until FEMA issues guidance for the communities on NMFS' RPA requirements and how communities can comply with these requirements."  Grimm Decl. Attachment 2, ECF No. 18-1 at 147 (Letter to Representative Peter DeFazio).

### III.  STANDARD OF REVIEW

"[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Accordingly, the Court may consider materials outside the pleadings, including the Grimm Declaration, ECF No. 18-1, for purposes of deciding jurisdictional questions of finality and ripeness with respect to Counts 5 and 6, which allege Administrative Procedure Act claims and National Environmental Policy Act violations by FEMA.  The district court may consider the affidavits submitted by Plaintiffs for purposes of

determining standing with respect to all of the claims in this case; however, for the reasons set forth below, the proffered declarations do not support Plaintiffs' assertion of standing.

## IV.  ARGUMENT

### A.  Plaintiffs have not met their burden to demonstrate Article III standing.

To establish standing, Plaintiffs must demonstrate an injury in fact that is fairly traceable to FEMA and NMFS's challenged conduct, and which can be redressed by a favorable decision. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  This task is rendered "'substantially more difficult'"—indeed, in this case impossible—by Plaintiffs' choice to challenge the Biological Opinion now rather than waiting until FEMA has implemented either the RPA or any alleged "*de facto*" amendment of FEMA's NFIP minimum criteria, 60 C.F.R. § 60.3(a)(2).  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)).  Because FEMA has not even issued, let alone put into action its implementation plan, Plaintiffs' alleged injuries are purely prospective and speculative, and "any petitioner alleging only future injuries confronts a significantly more rigorous burden to establish standing."  *United Transp. Union v. I.C.C.*, 891 F.2d 908, 913 (D.C. Cir. 1989).  Under these circumstances, Plaintiffs' claims to economic, environmental, regulatory and procedural injury fail, and Rule 12(b)(1) necessitates dismissal of their action.

### 1.  This Court can consider the Grimm Declaration.

Plaintiffs claim that this Court should disregard the Grimm Declaration because allegedly only plaintiffs may submit extra-pleading materials.  ECF No. 19 at 10.  But the Court is not barred from considering extra-pleading materials.  In deciding a 12(b)(1) motion, the court need not limit itself to the allegations of the complaint.  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir.1986), *vacated on*

*other grounds*, 482 U.S. 64 (1987); 5B Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed.).  Rather, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Board of Elections and Ethics*, 104 F.Supp.2d 18, 22 (D.D.C. 2000) (*citing Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); s*ee also Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (noting only a court may "take additional evidence to assure itself of the existence of standing").  Thus, the Court is not barred from considering the Grimm Declaration.

Even if the Court declines to consider the Grimm Declaration, the attachments thereto may be considered. Plaintiffs do not dispute the letters annexed to the Grimm Declaration were sent nor do they contend that they are inappropriate for this Court to consider.[2]  Thus, to the extent the Court deems these letters appropriate, it may consider them to resolve whether Plaintiffs have adequately alleged standing.  Moreover, it is well settled that the Court may properly consider documents—such as the biological assessment, biological opinion, and related documents concerning future implementation of the RPA—that are incorporated by reference in a complaint.  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Plaintiffs' complaint here references not only the biological assessment and the biological opinion but also characterizes FEMA's communications with communities and other stakeholders concerning future implementation of the RPA.  *See* ECF No. 1 at ¶¶ 64 – 91.  Under the circumstances, it is both reasonable and appropriate for the Court to review the various attachments to the Grimm Declaration, even if the Court determines that the declaration itself is not relevant to the standing inquiry.  *Vanover v.*

---

[2] The Grimm Declaration and attached exhibits are plainly relevant to a determination of the ripeness of Plaintiffs' claims under Counts 5 and 6.  Indeed, Plaintiffs do not assert that the Court may not consider the Grimm Declaration and attached exhibits in connection with those counts.

*Hantman*, 77 F. Supp. 2d 91, 98 (D.C.C. 1999) ("[W]here a document is referred to in the

complaint and is central to plaintiff's claim, such a document attached to the motion papers may

be considered without converting the motion to one for summary judgment." (citation omitted)).

> **2.     Plaintiffs allege only speculative and hypothetical injuries that are insufficient to establish standing.**

Even if this Court disregards the Grimm Declaration, Plaintiffs' own exhibits, to the

Complaint and to the five declarations they have submitted, demonstrate that Plaintiffs lack

standing.[3]   None of the Plaintiffs offer any credible assertion that they have actually been injured.

All of their alleged injuries consist of hypothetical injuries that they speculate might flow from

future implementation of the RPA.[4]   Plaintiffs' statements regarding the purported effects of the

---

[3] Should any portion of this case survive the motion to dismiss, the United States reserves the right to dispute Plaintiffs' standing (whether associational or otherwise) at any later phase of the case if Plaintiffs fail to provide additional detail regarding their standing claims or sufficient evidence to support those claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), (at pleading stage general factual allegations of injury may satisfy burden of establishing standing, but at summary judgment stage plaintiff must set forth specific facts by affidavit or other evidence).

[4] For example, in her declaration, Sarah Absher cites a series of concerns she has *if* the County of Tillamook begins implementing RPA Element 2.  Ms. Absher claims that Tillamook County is "concerned" that FEMA will suspend the County from the NFIP.  Absher Decl., ECF No. 19-1 at 2 ¶ 5.  Ms. Absher also claims that her "primary concern" is that the Biological Opinion "will severely restrict development in the floodplain." *Id*. at 4 ¶ 9.  Chad Allen predicts that "[i]f" Tillamook County adopts or enforces the land use restrictions proposed" his property will be negatively impacted.  Allen Decl., ECF No. 19-2 at 3 ¶ 9.  Mark Kujala predicts that "[i]f the City of Warrenton adopts or enforces the land use restrictions recommended in the Biological Opinion," his business will become more difficult and costly to run.  Kujala Decl., ECF No. 19-3 at 2 ¶¶ 6-7 (noting that the Biological Opinion created "uncertainty" about future development).  Daniel Watson predicts that "[i]f the Association [of Northwest Steelheaders] is required to comply with RPA Element 2's mitigation requirements" he expects increased development costs.  Watson Decl., ECF No. 19-4 at 3 ¶ 14.  Richard Stelzig predicts that "[if] FEMA implements the Biological Opinion's recommended restrictions, these planned improvements will be prohibited or at least be rendered highly impracticable." Stelzig Decl., ECF No. 19-5 at 3 ¶ 11.  Mr. Stelzig also claims that the City is "concerned" that FEMA will suspend or terminate the City from the NFIP.  *Id*. ¶ 18.  Lastly. Mr. Stelzig claims that the Biological Opinion has created "uncertainty" regarding Plaintiffs' property values.

Biological Opinion on future land use planning decisions by local governments are legal conclusions, and need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Trudeau v. FTC,* 456 F.3d 178, 194 (D.C. Cir. 2006).

Plaintiffs' stated "concerns" about the purported effects of the Biological Opinion are purely speculative. FEMA has not implemented the RPA, other than to send a letter to communities, including guidance on how to elevate structures by methods other than fill, notifying them of the existence of the Biological Opinion. Plaintiffs have not and cannot allege that FEMA has taken any action that injures them to date. In fact, as set forth in the Declaration of Michael Grimm, FEMA is still in the process of determining how to implement the RPA in a manner consistent with its existing legal authorities and in consideration of input gathered from state and local stakeholder groups in Oregon. Grimm Decl., ECF No. 18-1 at 3-5 ¶¶ 10-14. *See also* Grimm Decl. Attachment 3, ECF No. 18-1 at 200 ("FEMA will work to implement all the RPA requirements that it has the legal authority to implement, and to the extent we determine that particular RPA is outside the scope of FEMA's authority to implement, we will explore and implement alternatives to accomplish the purpose of those RPA."); Absher Decl. Ex. A, ECF No. 19-1 at 19 ("FEMA will work toward implementation of the RPA requirements within our legal authority."). As a result, the RPA as implemented by FEMA may be very different from the RPA as written in the Biological Opinion, rendering Plaintiffs' alleged injuries entirely speculative. Furthermore, Plaintiffs cite to no concrete threats that FEMA has made that it will suspend any participant of the NFIP. Nor do Plaintiffs proffer actual examples of FEMA's enforcement of the

Biological Opinion.  Plaintiffs likewise identify no instances where a requested permit for

development was denied on the grounds that the Biological Opinion prohibits its issuance.[5]

FEMA has stated that it will not implement the RPA until it has issued an implementation

plan and provided guidance on how to implement the requirements laid out in the

implementation plan.  *See* Grimm Decl. Attachment 1, ECF No. 18-1 at 8.  Furthermore, FEMA

will offer technical assistance to the State and local governments to aid in implementation.  *Id*. at

21.  Because FEMA has neither made a final determination with respect to how it will implement

the RPA, it follows that FEMA has not and will not undertake any suspension or other

enforcement measures at this time based on the Biological Opinion. Plaintiffs' speculation about

how FEMA will implement the RPA and/or take enforcement measures are not sufficient to show

the required "actual or imminent, not conjectural or hypothetical" injury.[6]  *Lujan,* 504 U.S. at 560

(citation omitted).

As for Plaintiffs' fears that certain local governments lack sufficient time to implement

FEMA's not yet released implementation plan, such fears are ungrounded.  FEMA has expressly

assured local communities that "no enforcement actions will be taken against any participating

---

[5] Ms. Absher annexes to her declaration Power Point slides from a July 14, 2016 presentation that FEMA held in Tillamook County.  Absher Decl. Ex. A, ECF No. 19-1 at 2, 9-26.  This presentation expressly states that FEMA will work toward implementation of the RPA requirements "within [its] legal authority" and/or that it will "search for alternative methods of implementation to meet the overall goal of the RPA – working with the State, communities, Tribal Nations, and stakeholders."  *Id*. at 19.

[6] Plaintiffs further claim they have suffered an "injury in fact" because "[r]egardless of whether such restrictions [on development] are actually implemented by FEMA, the Biological Opinion creates uncertainty with respect to future development in the floodplain."  ECF No. 19 at 12. Mere uncertainly is insufficient to establish a concrete and particularized injury.  As the D.C. Circuit noted in *New England Power Generators Association, Inc. v. F.E.R.C.*, "[i]t would be a strange thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact."  707 F.3d 364, 369 (D.C. Cir. 2013) (dismissing for lack of standing because the complained of uncertainty was "quintessentially conjectural").

Oregon communities for failure to comply with NMFS' RPA requirements until FEMA issues guidance for the communities on NMFS' RPA requirements and how communities can comply with these requirements."  Grimm Decl. Attachment 2, ECF No. 18-1 at 147 (Letter to Representative Peter DeFazio).  Furthermore, FEMA expressly assured local communities in its presentation that it would offer technical assistance to local communities after its implementation plan was issued.  Absher Decl. Ex. A, ECF No. 19-1 at 21.

With respect to the alleged "additional resources and regulatory strain" placed on "Plaintiff Jurisdictions," ECF No. 19 at 14, Plaintiffs cannot rely upon the costs that they have allegedly incurred "understanding" the biological opinion to establish standing.  *See, e.g.*, Absher Decl., ECF No. 19-1 at 4 ¶ 13.  As stated by the U.S. Supreme Court, Plaintiffs' claim that "they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. Moreover, the cost of complying with agency procedures generally "which are normal incidents of participation in the agency process do not constitute irreparable injury" regardless of how "substantial and nonrecoverable" they may be. *California ex rel. Christensen v. FTC*, 549 F.2d 1321, 1323 (9th Cir. 1977).  The alleged impact on Plaintiffs of having had to devote resources to understanding and complying with potential future changes to the NFIP, is not a cognizable injury in fact sufficient to confer standing.[7]

---

[7] Even assuming for the sake of discussion that the task of understanding and complying with expected federal regulation were deemed to be a cognizable form of injury for purposes of establishing standing, Plaintiffs cannot credibly assert that such tasks were caused specifically by the challenged actions of NMFS and FEMA in this case.  A court first held that FEMA may be

**3.      Plaintiffs' alleged injuries are not fairly traceable to the challenged agency actions.**

Plaintiffs do not dispute that RPA Element 2 has not been implemented and that an implementation plan has not been issued.  Instead, Plaintiffs point to the allegedly "coercive" effects of the Biological Opinion to argue that injury is both imminent and traceable to the Biological Opinion.  ECF No. 19 at 17-18.  However, the Complaint itself annexes a letter from Plaintiff Oregonian Homebuilders Association, dated November 23, 2016, which urged FEMA to depart from implementing Interim Measures outlined in RPA Element 2, arguing that implementation was not required.  ECF No. 1-2 at 6.  FEMA has taken no steps to implement the Interim Measures.  FEMA certainly has not directed NFIP-participating communities to change their ordinances to conform to the RPA elements.  To the contrary, as reflected in FEMA's notice letters to participating communities dated June 13, 2016, any revision of ordinances would occur only after FEMA identifies interim measures pursuant to RPA Element 2 and issues guidance concerning the implementation of those interim measures.  Grimm Decl. Attachment 1, ECF No. 18-1 at 8.  ("Oregon [Department of Land Conservation and Development] and FEMA will develop guidance to help your community implement these interim requirements.").  At that point, after FEMA identifies interim measures and develops guidance, participating communities would have a choice to voluntarily impose a temporary moratorium on all floodplain

---

obligated to consult with FWS or NMFS concerning its implementation of the NFIP in certain circumstances over 20 years ago in *Florida Key Deer v. Stickney*, 864 F. Supp. 1222 (S.D. Fla. 1994).  As reflected in the exhibit submitted by Plaintiffs, Absher Decl. Ex. A, ECF No. 19-1 at 25, there are several NFIP-participating communities around the country that are currently subject to ESA consultation procedures.  Thus, the imperative for NFIP-participating communities to become familiar with their responsibilities to avoid the taking of listed species under the ESA did not arise specifically as a result of the biological opinion at issue in this case. Indeed, unless they have a permit or some other form of exemption from ESA liability pursuant to Section 10 of the ESA, 16 U.S.C. § 1540, "any person" may be liable if they take a threatened or endangered species pursuant to Section 10 of the ESA, 16 U.S.C. § 1540.

development that adversely impacts ESA listed species or their habitat, or voluntarily implement the interim measures. *Id.* Plaintiffs do not allege that any NFIP-participating community in Oregon has undertaken any revisions to their ordinances to begin implementing RPA Element 2, no communities have changed their ordinances, started the process of making changes to their ordinances, or expressed any intent to do either.

This case contrasts with *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997), in which the Court held that a biological opinion had a determinative or coercive effect for purposes of establishing Article III standing because the action agency would be legally vulnerable if it simply disregarded that opinion. *Bennett*, 520 U.S. at 169-71. The biological opinion in *Bennett* analyzed a single action (the provision of irrigation water from Bureau of Land Management Reservoirs), and the only realistic way for the agency to proceed with that action in light of the opinion's analysis was to adopt the modifications identified in the opinion. *See id.* at 169-70. Furthermore, the agency in *Bennett* had already informed the affected irrigators of its decision to implement the biological opinion. *Id.* at 159. Here, by contrast, the proposed action – implementation of the NFIP throughout the state of Oregon involves multiple actions. The biological opinion includes six elements and a lengthy implementation period. Given this complexity, it is not surprising that FEMA is still in the process of evaluating implementation options, and FEMA has clearly and repeatedly informed Oregon NFIP communities that it is still evaluating the opinion and determining how to implement the RPA in a manner consistent with its existing legal authorities. Absher Decl. Ex. A, ECF No. 19-1 at 19. Moreover, in contrast to the circumstances in *Bennett,* the communities' participation in the NFIP remains voluntary. *See*

*generally* 44 C.F.R. § 60.3.[8]  Furthermore, if they seek to ensure their own compliance with the

ESA, communities have alternatives other than relying on the incidental take statement that

accompanies the Biological Opinion.  16 U.S.C. § 1536(o).  In sum, the Biological Opinion at

issue here is neither coercive nor determinative with respect to future actions by FEMA or, for

that matter, the alleged, speculative future injuries of NFIP-participating communities and other

stakeholders.

4. **The relief sought--setting aside the Biological Opinion--will not redress Plaintiffs' alleged injuries.**

The relief sought--setting aside the Biological Opinion--will not redress Plaintiffs'

alleged injuries, because such injuries are entirely speculative, for the reasons discussed above.

To the extent Plaintiffs claim that they have been actually harmed because the Biological

Opinion is "inadequate" with respect to the manner in which it avoids jeopardy to species and

therefore harms Plaintiffs' alleged "interests in the conservation of ESA-listed species,"  ECF

No. 19 at 13, Plaintiffs still fail to allege a redressable injury.[9]  As the U.S. Court of Appeals for

---

[8] To join the NFIP, a community must:
    1. Complete an application;
    2. Adopt a resolution of intent to participate and cooperate with FEMA; and
    3. Adopt and submit a floodplain management ordinance that meets or exceeds the minimum NFIP criteria. The floodplain management ordinance must also adopt any FIRM or FHBM for the community.
44 C.F.R § 60.3.

[9] In efforts to establish environmental injury, Plaintiffs assert that the RPA recommends lot-by-lot mitigation rather than larger scale protection and restoration efforts and therefore will not adequately protect fisheries and habitat.  Allen Decl., ECF No. 19-2 at 6 ¶ 19, Watson Decl., ECF No. 19-4 at 4 ¶ 15.  These assertions plainly mischaracterize the biological opinion.  The opinion does not require lot-by-lot mitigation under all circumstances, and expressly provides that "[u]se of an NMFS-approved conservation bank or in-lieu fee program may provide an acceptable alternative approach to compensate for adverse effects of floodplain development." ECF No. 18-3 at 410.  Because Plaintiffs' alleged environmental concerns are based on a mischaracterization of the biological opinion, they cannot support standing to challenge NMFS's or FEMA's actions on environmental grounds.

the Ninth Circuit observed in its decision upholding RPAs adopted to conserve the Southwestern

Willow Flycatcher in the Lake Mead delta, a consulting agency (in this case, NMFS) is not

required to pick the "best" alternative or the one that would most effectively protect the species

from jeopardy. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 523

(9th Cir. 1998) (*citing Center for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1143 (S.D.

Tex. 1996)).  Even if Plaintiffs' disagreement with the chosen RPA can be construed as an injury

for purposes of standing, this alleged injury is not likely to be redressed by review of the

Biological Opinion here.

    In short, Plaintiffs have not shown that setting aside the Biological Opinion will aid in the

conservation of ESA-listed species.  Similarly, setting aside the Biological Opinion will not

immunize Plaintiffs from liability should they violate the ESA by taking an endangered or

threatened species.  *See, e.g., Loggerhead Turtle v. County Council of Volusia County, Florida,*

148 F.3d 1231, 1250-52 (11th Cir. 1998) ("[T]he regulatory acts of governmental entities can

cause takes of protected wildlife.").  Plaintiffs' asserted environmental injuries cannot save their

Complaint from dismissal.

    **5.     Plaintiffs fail to demonstrate standing to pursue their procedural injury
            claims.**

    Plaintiffs' alleged procedural injury fails because any alleged failure to perform

rulemaking or a NEPA analysis prior to adopting the alleged *de facto* amendment of FEMA's

NFIP minimum criteria, 60 C.F.R. § 60.3(a)(2), has not caused any concrete harm or injury to

Plaintiffs.  *Swanson Group Mfg. LLC v. Jewell,* 790 F.3d 235 (D.C. Cir. 2015).  *See also Ctr. for*

*Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005); *United Transp. Union v.*

*I.C.C.*, 891 F.2d at 918; *New York Reg'l Interconnect, Inc. v. F.E.R.C.*, 634 F.3d 581, 587 (D.C.

Cir. 2011).  Nothing in either the Complaint or Plaintiffs' declarations demonstrates any

impairment to some concrete interest as a result of the alleged violation of their informational or procedural rights. With respect to Plaintiffs' NEPA claim in particular, Plaintiffs have asserted nothing more than generalized and speculative fear that a *de facto* amendment will occur and will lead to development in agricultural lands that "otherwise could have occurred in developed lands." ECF No. 19 at 26.

Here, as in *National Association of Home Builders v. United States Army Corps of Engineers*, 417 F.3d 1272, 1286 (D.C. Cir. 2005), Plaintiffs fail to identify evidence "supporting the proposition that there is a 'substantial probability' of 'actual or imminent' injury to its members arising from" the agency's alleged failure to conduct an environmental analysis. *Id.* at 1288 (citing *Sierra Club v. EPA*, 292 F.3d 895, 902 (D.C. Cir. 2002)). Such a procedural injury– *in vacuo*—is inadequate to establish standing. *Summers v. Earth Island Inst.*, 555 U.S. at 496.

This case is distinguishable from *WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013), where increased local pollution resulting from BLM's approval of coal leases was reasonably concrete and imminent. Here, despite Plaintiffs' claims that FEMA has adopted a *de facto* amendment of its permitting regulations, they provide no concrete examples of FEMA's enforcement of the alleged amendment.

To the extent that Plaintiffs seek to establish standing by showing injury not to their economic interests but rather to their alleged environmental interests, they fail. *See Natural Res. Def. Council ("NRDC") v. EPA,* 464 F.3d 1, 6 (D.C. Cir. 2006); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996). "[B]ecause environmental injuries are often probabilistic, the Circuit has 'cautioned that this category of injury may be too expansive.'" *Williams v. Dist. of Columbia*, 530 F.Supp.2d 119, 126 (D.D.C. 2008) (quoting *NRDC*, 464 F.3d at 6). "Were all purely speculative 'increased risks' deemed injurious, the entire requirement of

actual or imminent injury would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of injury.' [Courts] therefore generally require that petitioners demonstrate a 'substantial probability' that they will be injured." *NRDC*, 464 F.3d at 6 (internal quotation omitted). Thus, the Circuit allows standing based on environmental harm "when there was at least *both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007) (citing *Mountain States*, 92 F.3d at 1234–35) (emphasis in original).

Plaintiffs cannot make such a showing here.[10]  Plaintiffs' alleged injuries to their asserted environmental interests are entirely speculative at this time.  Plaintiffs cannot show a substantial increase in risk that the land use system will be disrupted nor a substantial probability that Plaintiffs' environmental interests would be harmed by any such disruption.  Even if Plaintiffs had alleged facts sufficient to meet their burden of demonstrating an environmental injury, moreover, for the reasons set forth above they would have failed to demonstrate that the alleged injuries are "fairly traceable" to the Biological Opinion rather than to future and entirely voluntary actions that may or may not be taken by NFIP-participating communities after FEMA identifies interim measures pursuant to RPA Element 2 and issues guidance concerning the implementation of those interim measures.

---

[10] With regard to injuries to environmental interests, Plaintiff Oregonians for Floodplain Protection and its members assert that they are "concerned about and dedicated to protecting the environment and the land use system developed in Oregon over the last 40 years."  Complaint, ECF No. 1 at ¶ 13.  Furthermore, they allege that "[i]mplementation of the development restrictions set forth in the RPA will undermine that land use system."  *Id.*  Again, the development restrictions set forth in the RPA are not being implemented at this time, and (as reflected in Plaintiffs' own exhibit) FEMA has stated that it is still determining how to implement the RPA in a manner consistent with its legal authorities.  Absher Decl. Ex. A, ECF No. 19-1 at 19.

Plaintiffs also fail to show a causal connection between the alleged procedural defect and the alleged injuries.  Here, the alleged *de facto* amendment and the alleged injury are separated by many intervening events: (1) FEMA's proposed action in the Biological Assessment (*i.e.*, implementation of the NFIP in Oregon with proposed changes including but not limited to the alleged *de facto* amendment); (2) the communities' revision of ordinances in light of FEMA's proposal for action; (3) changes in the way communities review development permits based on new or revised ordinances; and (4) denial of permits to Plaintiffs in the future.  This causal connection is simply too attenuated and speculative to show that the alleged injury is "fairly traceable to" any purported amendment proposal described in the Biological Assessment, a non-binding document.  *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 175 (D.C. Cir. 2012) (fact that EPA actions did not directly impose regulatory restrictions or other burdens on petitioners made task of establishing standing more difficult).

**B.      The Court lacks jurisdiction over all claims against FEMA.**

Alternatively, the court should dismiss the claims against FEMA because they do not challenge final agency action and are unripe.  As a threshold matter, Defendants note that Plaintiffs do not dispute FEMA's assertion that it has not yet implemented the disputed RPA elements of the NMFS biological opinion.  *See* ECF No. 19. Plaintiffs offer no arguments in response to Defendants' showing that the Court lacks jurisdiction to hear claims concerning FEMA's implementation of the RPA.  Plaintiffs' claims concerning FEMA's purported implementation of the RPA, *e.g.*, ECF No. 1 at ¶ 117 ("in an effort to provide itself with authority to implement the RPA") and ¶ 124 ("FEMA's implementation of the RPA constitutes a major federal action significantly affecting the quality of the human environment") should be deemed abandoned.  "It is well understood in this Circuit that when a plaintiff files an opposition

to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F.Supp.2d 15, 25 (D.D.C. 2003) (citation omitted) (quoted in *Estate of Gaither ex rel. Gaither v. District of Columbia*, 655 F.Supp.2d 69, 99 (D.D.C. 2009).  To the extent Plaintiffs continue to assert any claims against FEMA, Plaintiffs focus exclusively on what they characterize as a *de facto* amendment of the NFIP minimum criteria set forth at 44 C.F.R. §  60.3(a)(2).  Such claims against FEMA must be dismissed based on the related yet distinct grounds of finality and ripeness

### 1.    Counts 5 and 6 must be dismissed, because they do not challenge any final, reviewable agency action.

The United States cannot be sued in any court without a waiver of sovereign immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983).  NEPA does not provide for a private right of action and does not supply a waiver of the United States' sovereign immunity.  *See* NEPA, 42 U.S.C. § § 4321 *et seq; Town of Stratford v. FAA*, 285 F.3d 84, 88 (D.C. Cir. 2002). In these circumstances, the APA, 5 U.S.C. §§ 701-706 provides the only waiver of sovereign immunity available to Counts 5 and 6.  The existence of a final agency action is a prerequisite to judicial review of Counts 5 and 6 under the APA.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'").[11]

---

[11] The D.C. Circuit previously characterized the finality requirement as jurisdictional.  *E.g., Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("Whether there is a final agency action is also a jurisdictional question.").  More recently, however, the D.C. Circuit has clarified that finality is not jurisdictional but rather among the "essential ingredients of a federal claim for relief."  *Trudeau v. Federal Trade Comm.*, 456 F.3d 178, 184 n. 7 (D.C. Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

As noted above, Plaintiffs appear to concede that FEMA has not yet taken any final action with respect to the disputed RPA elements.  *See* ECF No. 19 at 33-35.  Plaintiffs' finality arguments with respect to Counts 5 and 6 are based solely on FEMA's 2013 biological assessment, which pre-dated the disputed RPA elements.  Plaintiffs incorrectly assert that certain proposals in FEMA's non-binding 2013 biological assessment constitute a *de facto* amendment of FEMA's regulatory requirements for communities to be eligible to participate in the NFIP.

Defendants cited numerous cases for the proposition that a biological assessment is not itself a final, reviewable agency action.  *See* ECF No. 18 at 30-31.  Instead of attempting to distinguish these cases, Plaintiffs baldly assert that Defendants' citation to this authority "misses the point" and appear to assert that statements made in the biological assessment are binding.  ECF No. 19 at 33.  If the biological assessment is not a final, reviewable agency action, it follows logically that isolated statements within the biological assessment are similarly not final or reviewable.

Applying the finality criteria set forth in *Bennett v. Spear* confirms that any statements in the biological assessment cannot reasonably be construed as a final agency action for purposes of APA review.  520 U.S. 154, 177-178 (1997).  On its face, the "Proposed Action" described in the biological assessment is not the consummation of the agency's decisionmaking process, but rather a proposal for future implementation of the NFIP for purposes of initiating ESA consultation with NMFS.  Def. Ex. 7, ECF No. 18-7 at 14.  To avoid an ESA violation, FEMA must now modify its proposed action in light of NMFS's recommendations in the RPA.  *See Bennett*, 520 U.S. at 170 ("[T]he Biological Opinion's Incidental Take Statement constitutes a permit authorizing the action agency to 'take' the endangered or threatened species so long as it respects the Service's 'terms and conditions.'").  Accordingly, the "Proposed Action" described

in the biological assessment is not itself an action from which rights or obligations have been determined, or from which legal obligations will flow. *Bennett*, 520 U.S. at 177-78. The proposed action described in the biological assessment imposes no legal obligations whatsoever upon the NFIP-participating communities. Accordingly, the proposed action described in the biological assessment does not establish a binding norm that might otherwise reflect final agency action. *Ctr. For Auto Safety v. Nat'l Hwy. Traffic Safety Admin.,* 452 F.3d 798, 806 (D.C. Cir. 2006).[12]

It is of no moment that FEMA stated in the biological assessment that its proposed implementation of 44 C.F.R. § 60.3(a)(2) did not "warrant a change in the CFR or a reevaluation under NEPA." ECF No. 18-7 at 54. Putting aside the fact that the biological assessment itself is not a final, reviewable agency action, an isolated statement in a biological assessment may not be deemed a final or binding pronouncement of FEMA's interpretation of its regulations. Even if one were to assume that FEMA's statements constituted a legal interpretation, the relevant case law demonstrates that it was not a final agency action. The relevant criteria for determining final action in an agency's interpretation of law are set forth in *Student Loan Marketing Ass'n v. Riley*, 104 F.3d 397 (D.C. Cir. 1997).[13] *Student Loan Marketing Ass'n*, analyzed three criteria to

---

[12] The facts here are also distinguishable from *Gen. Elec. Co. v. E.P.A.,* 290 F.3d 377, 383 (D.C. Cir. 2002), in which the court held that an agency guidance document imposed "binding obligations" on the regulated community. Here, the "Proposed Action" plainly fails to meet the practical standard set forth in *Gen. Elec. Co. v. EPA*. First, nothing about the "Proposed Action" "appears on its face to be binding." *Id.* at 383. On its face, the "Proposed Action" in the Biological Assessment is prospective and not binding. ECF No. 18-7 at 14 ("Proposed Action: Current Program and Proposed Changes"). Second, FEMA has not applied the "Proposed Action" in any way to indicate that it is binding or has the force of law. 290 F.3d at 383. To the contrary, the "Proposed Action" described in the biological assessment imposes no obligations whatsoever on the NFIP-participating communities.

[13] Plaintiffs' citations do not support a finding of finality either. In *Appalachian Power Co. v. Environmental Protection Agency*, 208 F.3d 1016, 1023 (D.C. Cir. 2000) the court held that an

determine whether a legal interpretation set forth in agency correspondence was final:  "'[1] When a published interpretation represents the initial views of an agency, approved by the Commission or person who heads the agency, [2] when it is the product of the process provided by the agency for taking into account the position of agency staff as well as the outside presentation, [3] when the interpretation is not labeled as tentative or otherwise qualified by arrangement for reconsideration,' then it is final for purposes of judicial review."  104 F.3d at 405 (quoting *Nat'l Auto. Laundry & Cleaning Council v. Shultz*, 443 F.2d 689 (D.C. Cir. 1971)).

FEMA's statements regarding the minimum criterion at 44 C.F.R. § 60.3(a)(2) are not a final action for purposes of judicial review, based on the criteria in *Student Loan Marketing Ass'n*, 104 F.3d at 405.  The biological assessment was prepared by an outside consultant, AECOM (Architecture, Engineering, Consulting, Operations, and Maintenance), on behalf of FEMA Region X staff.  ECF No. 18-7 at 2.  Most importantly, as explained above, the disputed statements are included in a description of a "proposed action" that is plainly both tentative and qualified by arrangement for reconsideration.  *Id.* at 54.  In sum, Counts 5 and 6 do not challenge a final, reviewable action and must be dismissed.

---

EPA guidance document was final agency action because it reflected "settled agency position which has legal consequences both for State agencies administering their permit programs and for companies like those represented by petitioners who must obtain [Clean Air Act] permits in order to continue operating."  In *National Mining Ass'n v. Jackson*, 768 F.Supp.2d 34, 43 (D.D.C. 2011), the Court similarly concluded that EPA had implemented a change in its Clean Water Act permitting process that gave rise to legal consequences for affected companies.  In *Croplife America v. Environmental Protection Agency*, 329 F.3d 876, 881 (D.C. Cir. 2003), the court concluded that an EPA directive constituted a binding regulation because it was "directly aimed at and enforceable against petitioners."  Here, by contrast, FEMA's statements concerning proposed implementation of an existing regulation as part of the "Proposed Action" in the biological assessment does not have any legal consequences for NFIP-participating communities or any other stakeholders.  FEMA has yet to articulate what, if any, changes to the NFIP minimum criteria, or the implementation of those criteria, will be implemented in response to the "jeopardy" Biological Opinion issued by NMFS.

## 2.      Counts 5 and 6 must be dismissed, because they are unripe.

As with their arguments alleging finality with respect to Counts 5 & 6, Plaintiffs'

arguments alleging ripeness address solely what they characterize as the *de facto* amendment of

the NFIP regulations set forth at 44 C.F.R. § 60.3(a)(2).  *See* ECF No. 19 at 35-37.  Plaintiffs'

Count 5 alleges that FEMA violated the rulemaking provisions of the APA in rendering its

interpretation of 44 C.F.R. § 60.3(a)(2) within its description of the "proposed action" under

consultation.  ECF No. 19 at 35; ECF No. 1 at ¶ 118.  Plaintiffs suggest that FEMA's proposal

for action constituted an amendment to the NFIP minimum criteria.  *See id.*  Based on this

premise, Plaintiffs contend that FEMA must comply with the rulemaking provisions of the APA,

and specifically the provisions regarding notice and comment found in 5 U.S.C. § 553.  ECF No.

1 at ¶ 118.  Plaintiffs allege that FEMA failed to provide proper notice and comment prior to

rendering its alleged legal interpretation.  *Id.* ¶¶ 118, 120.  Just as FEMA's statements about its

regulations as part of the "proposed action" in a biological assessment do not constitute a final

agency action, they also cannot form the basis of any ripe claims against FEMA.

With respect to Count 5, Plaintiffs entirely fail to address Defendants' arguments based

on the ripeness criteria set forth in *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998).

*See* ECF No. 19 at 35-37.  Plaintiffs suggest that Count 5 is ripe based on the criteria set forth in

*Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986), but these criteria

do not establish ripeness here.  First, Plaintiffs assert that "[t]he Court need look no further than

the face of page 2-40 of the Biological Assessment to determine that FEMA's pronouncement" is

a final action that purports to bind the Plaintiffs and the agency.  ECF No. 19 at 36.  To the

contrary, the Court need look no further than the same page to see that FEMA's statements about

its regulations were included in the biological assessment as part of its description of the

"proposed action" subject to consultation.  ECF No. 18-7 at 53.  Plaintiffs' *de facto* rulemaking

claims also require both further factual development and administrative action.  As described

above, FEMA has not yet determined what, if any, changes to its proposed action may be

required in response to the "jeopardy" biological opinion.  Plaintiffs' *de facto* rulemaking claims

in Count 5 will not ripen until FEMA makes a determination with respect to how it will

implement the RPA in a manner consistent with its legal authorities and adopts a plan to

implement the RPA.  Because further factual development and administrative action must

precede any application of the disputed alleged legal interpretation that may actually affect

NFIP-participating communities or other stakeholders, the facts here stand in contrast to cases

such as *Rancho Viejo, LLC v. Norton*, No. CIV.A.1:00CV02798, 2001 WL 1223502 at *3

(D.D.C. 2001), in which the court found that "federal actors have already applied the ESA to the

plaintiff by preventing [plaintiff] from obtaining necessary permits and threatening it with

criminal prosecution and civil liability."  None of the Plaintiffs' declarants asserts that anyone

has been prevented from obtaining necessary permits as a result of the purported *de facto*

amendment of 44 C.F.R. § 60.3(a)(2) or any other alleged action by FEMA in connection with

the disputed biological opinion.

For the same reasons, Plaintiffs' NEPA claims in Count 6 will not ripen until FEMA

takes further action to implement the RPA.  As stated in *Ohio Forestry Ass'n v. Sierra Club*, 523

U.S. 726, 735 (1998) a claim is not ripe where the "possibility that further consideration will

actually occur before [implementation] is not theoretical, but real."  Further consideration will

certainly occur here.  Although FEMA is committed to complying with the requirements of

NEPA at the appropriate time, it cannot practically do so prior to developing an implementation

plan.  *See* Grimm Decl., ECF No. 18-1 at 4-5 ¶ 14.  In sum, because further factual development

would assist the Court in evaluating the merits of Plaintiffs' Counts 5 & 6, the Court should defer review of these claims and dismiss these claims as unripe.

Finally, for all the same reasons why they are not injured at this time, Plaintiffs also will not suffer hardship if the Court waits to review their claims until FEMA takes further action with respect to the RPA.  Any revision of ordinances by NFIP-participating communities will necessarily occur after FEMA identifies any interim measures pursuant to the RPA and issues guidance concerning the implementation of those interim measures.  Grimm Decl. Attachment 1, ECF No. 18-1 at 8.  The Court should dismiss Counts 5 and 6 pending these further actions by FEMA.

## CONCLUSION

Plaintiffs fail to demonstrate that they have standing to challenge any action of NMFS or FEMA to date, and this case should be dismissed in its entirety.  In the alternative, the Court should dismiss Counts 5 and 6 against FEMA on finality and ripeness grounds.  FEMA has not taken any final action with respect to what Plaintiffs characterize as the *de facto* amendment of 44 C.F.R. § 60.3(a)(2) and has not otherwise implemented any of the disputed elements of the reasonable and prudent alternative recommended by NMFS.

DATED this 4th day of October, 2017.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief


*s/ Mark Arthur Brown*
MARK ARTHUR BROWN

25

D.C. Bar No. 470050
Senior Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0204
Facsimile: (202) 305-0275
mark.brown@usdoj.gov

SARAH IZFAR
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0490
Sarah.izfar@usdoj.gov

Counsel for Defendants

Of Counsel:

SABRINA McBRIDE
RAZEYEH JAFARZADEH
Office of General Counsel
Federal Emergency Management Agency
500 C Street, S.W.
Washington, D.C.  20472
(202) 646-3235


LAURIE K. BEALE
Attorney-Advisor, Northwest Section
NOAA Office of General Counsel
U.S. Department of Commerce
7600 Sand Point Way NE
Seattle, WA 98115
(206) 526-6327

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2017, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

_/s/ Mark Arthur Brown_
MARK ARTHUR BROWN